[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, hereinafter FDIC, has moved for a deficiency judgment following a judgment of strict foreclosure against the named defendant, as well as the individual defendants Anthony Gallicchio and Daniel Gallicchio.
The corporate defendant, Gallicchio Bros. Inc., had executed a promissory note and mortgage on several properties in favor of Sentinel Bank. Anthony Gallicchio and Daniel Gallicchio signed individually a guarantee agreement for the corporate indebtedness.
Because the note was in default, the FDIC, as successor to the failed Sentinel Bank, brought a foreclosure action. The parties stipulated to a judgment of strict foreclosure, but reserved the right to challenge the debt during any subsequent deficiency proceeding, including the right to challenge the valuations of the properties proffered at the original foreclosure hearing. The defendants, however, did not challenge the valuation evidence at the deficiency hearing but did challenge the calculation of the debt and the right of the FDIC to enforce the guaranty against Anthony and Daniel Gallicchio (hereinafter "individual defendants").
 Is the guaranty enforceable?
The individual defendants do not dispute that they executed and delivered a "Letter of Guarantee", a copy of which was admitted into evidence as Plaintiff's exhibit 4 over the defendants' objection. The plaintiff established by a preponderance of the evidence that the original guaranty agreement was missing; that the original had been executed and delivered by the individual defendants and that the copy replicated the original document. See Connecticut Bank TrustCo. v. Wilcox, 201 Conn. 570, 573 (1986).
Madeline Siewartsen, an Investigations Technician with the FDIC made a diligent search for the original guaranty when the FDIC took over Sentinel Bank, including the "Collateral Vault", where the original would normally have been kept, the file room and warehouse where it might have been kept. She found a copy in CT Page 5318 the Bank's credit file. A copy of the copy was admitted into evidence.
The defendants argue that Sentinel Bank could have possibly sold the guaranty independently from the promissory note it guaranteed and without the original no one can say that did not happen. The defendants supposition was disproved by the evidence. John Baker, the bank's executive Vice President, its senior lending officer and Secretary of the loan committee testified quite credibly that Sentinel Bank never sold or assigned any of its loans or guaranty agreements. Additionally, in his experience he was not aware of a guaranty being sold independently of the underlying note, although it would be possible to do so.
Mr. Baker's testimony was corroborated by Patricia Carbee, an account officer with the FDIC with prior banking experience. She reviewed the bank's records and found no sign or indication that the guaranty in question was ever sold or assigned. She, like Mr. Baker, never heard of a guaranty being sold or assigned separate and apart from the underlying obligation. The defendants do not dispute that the FDIC did not sell the guaranty agreement after if seized Sentinel Bank.
This Court concludes that the guaranty was properly admitted into evidence and that it establishes the liability of the individual defendants.
 Evidence of the amount of the debt
The defendants claim the evidence submitted to establish the debt was inaccurate and unreliable. The Court does not agree.
The plaintiff introduced a computerized loan history of the account in question (plaintiff's exhibit 6), together with corroborating testimony from Diane Jacques, a credit technician with the FDIC who verified the accuracy of the accrued interest by hand-calculating the amount; and who testified as to how the computer programs did daily reconciliations to verify that the records were accurate. Michael Zitt, an employee of NCR testified as to the validation process used to insure accuracy and to cross check for any errors. Penny Lewis, a bank examiner with the FDIC and a bank liquidation specialist ascertained that the bank's loan file was in balance.
In short there was ample evidence of the loan history in this CT Page 5319 case including the payments made against the note.
The defendants argue that the bank's records are unreliable because partial payments were sometimes applied to principal instead of to outstanding interest and that this was not usual and customary banking practice, therefore the accuracy of exhibit 6 should be questioned. Simply, the bank had the discretion to allocate payments as it wished and there was credible evidence as to why it chose to allocate payments the way it did — to simplify its internal record keeping. And, of course, this procedure actually worked to the benefit of the defendants.
There was no evidence that the defendants made any more payments against the note then those shown by the bank records and the terms of the note itself gave the bank the discretion of applying payments to either principal or interest.
The plaintiff has proved that the accuracy of the debt as shown in its records. (Exhibit 6).
 The substitute rate of interest used following the FDIC takeover
Under the terms of the promissory note with Sentinel Bank, the rate of interest was established at 11%. The note provided that after one year and annually thereafter the rate of interest could change on the "change date" and the new interest rate would be calculated by adding two percentage points to the Sentinel Bank's base rate in effect on the "change date". (When the note was originally executed the bank's base rate was nine per cent). The note further provided that the Sentinel Bank Base Rate was "a rate designed as such by the Bank from time to time as a standard for setting loan rates. It is not necessarily the best or lowest interest rate charged by the Bank. If, for any reason, the Bank should discontinue the designation of such a Base Lending Rate the Bank will select a comparable substitute index in its reasonable judgment."
When Sentinel Bank failed and was taken over by the FDIC the index governing the interest rate of the note no longer existed. The burden was then on the FDIC, as the successor to Sentinel Bank, to prove the reasonableness of the substituted rate of interest under the circumstances. Central Bank v. ColonialRomanelli Associates, 38 Conn. App. 575, 578 (1995).
In this case, the FDIC, after it had taken over the failed CT Page 5320 bank, substituted the prime rate as reported in the Wall Street Journal (and added two percentage points to the Wall Street prime rate to calculate a substitute rate of interest). This methodology was used in accordance with an FDIC directive, but there was no evidence presented to the reasonableness of the substituted rate. Merely because a directive was followed does not meet that burden of proof. Federal Deposit Ins. Corp. v.Keating, 44 Conn. App. 556, 560 (1997).
Accordingly, the plaintiff is not entitled to collect interest on the debt after May 31, 1992 which was the "change date" under the terms of the note.
As of 1/31/92, the principal debt was $578,335.74 and unpaid accrued interest was $24,226.63. The plaintiff is entitled to additional interest from 2/1/92 thru 5/31/92 at 11%. In accordance with this opinion the plaintiff is not entitled to interest after 5/31/92, which was the "change date".
The deficiency is calculated in accordance with the attached worksheet.
A deficiency judgment shall enter against all defendants in the amount of $584,058.74.
Klaczak, J.
 COMPUTATION FOR DEFICIENCY JUDGMENT AFTER STRICT FORECLOSURE
Date of judgment of strict foreclosure July 20, 1998 
Date Title Vested July 27, 1998 
Value of property on date of Judgment of Strict Foreclosure $ 222,250.00 
623,477.17
A. Judgment debt as of the Original Judgment (Principal _____________ and interest thru 5/31/92)
B. Attorney fee awarded by Court + — 
C. Appraisal fee awarded by Court + — 
CT Page 5321
D. Title Search fee awarded by Court + $ 150.00 
E. Other costs (exclusive of appraisal fee title search fee). + $ 708.20 
F. Per diem interest from the date of Judgment of Strict Foreclosure to the Date of Title Vesting. per diem interest rate 170.81 X 7 days = + $ 1,195.67 =
A+B+C+D+E+F = Subtotal of original debt $ 625,531.04 
G. Statutory interest from date of title vesting to date of Deficiency Judgment (on only the deficiency i.e. the original debt less the established value of the property.)
Computation of Statutory Interest:
Subtotal of original debt: $625,531.04 
Value of property at time title vested: — 222,250.00 
Statutory rate of interest: * 10 % 
÷ 355 days 110.49 
Number of days from date of vesting x days = statutory interest + $ 29,611.32
to date of deficiency (268 days 7/28/98 4/21/99)
H. Additional Attorneys fees allowed by the court + $ 49,000.00
I. Additional Appraisers fee allowed by the court + $ 2,500.00
J. Tax liens not previously included $ 93,530.79 + $ 99,666.38=
K. 6,135,59 TOTAL DEBT $ 806,308.74
L. Less the value of the property as of - $ 222,250.00= date title vested in Plaintiff
DEFICIENCY JUDGMENT $ 584,058.74
CT Page 5322